UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-CV-551-KKC

JAMES D. SCOTT                                                                                       PETITIONER

VS:                           **MEMORANDUM OPINION AND ORDER**

FEDERAL BUREAU OF PRISONS, ET AL.                                              RESPONDENTS

      This proceeding is before the Court for consideration. The petitioner, James D. Scott, is confined at the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester"). He has filed, by and through counsel, a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. He is represented by counsel. The respondents are the Bureau of Prisons ("BOP") and Jeff Grondolsky, the Warden of FCI-Manchester. The respondents are represented by the United States Attorney's Office for the Eastern District of Kentucky.[1]

      The petitioner was convicted of Willful Filing of False Income Tax in the United States District Court for the Western District of Kentucky. On July 13, 2006, he was sentenced to a term of imprisonment of one year and a day, with one year of supervised release. According to the BOP, the petitioner's current projected good conduct time release date is July 1, 2007.

CLAIMS

      The petitioner claims that the respondents are violating his due process rights under the Fifth Amendment of the United States Constitution by refusing to consider him for immediate placement

---

[1] For ease of reference, the Court will refer to the respondents collectively as "the BOP."

in a Residential Re-entry Center ("RRC").[2] The BOP does not intend to place the petitioner in an RCC until June 1, 2007, which is only one month prior to his projected good conduct time release date. Thus, the petitioner will only be serving approximately ten percent of his federal sentence in an RCC. The petitioner seeks emergency injunctive relief in the form of an order directing the BOP to place him in a CCC immediately.

The petitioner argues that the "10% policy" regarding placement in RCC's, which the BOP has followed since 2002, should not be applied to him. He argues that the "10% policy" is contrary to Congressional intent, and that several federal appellate courts have found the BOP's policy to be unconstitutional. The petitioner cites various cases in support of his claim that the BOP is unable to provide him with adequate pre-release preparation, including but not limited to *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 683 (E.D. Ky. 2004); *Goldings v. Winn*, 383 F.3d 17 (1st Cir. 2004); and *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir.2004).

The BOP contends that its policy of releasing federal prisoners into RCC's for the last ten percent of their sentence is in all respects constitutional. The BOP contends that the policy fully complies with BOP Program Statement 7310.04.

DISCUSSION
1. <u>2002 Change in BOP Policy</u>

Prior to December 20, 2002, under its old interpretation of 18 U.S.C. §3624(c)), the BOP uniformly placed federal inmates in CCC's for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences. This was known as the "Six

---

[2] RCC's were previously referred to as Community Corrections Centers. RCC's are also known as "halfway houses." Federal prisoners are typically released into an RCC as part of their transition back into society. BOP Program Statement 7310.04

Month Policy."

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Policy was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18 U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute. The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C. §3624(c) and its previous policy regarding inmates' placement in CCC's. [3]

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum"). Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months (the "10% Policy").

Applying the "10% Policy" here, the BOP can defer Scott's pre-release into an RCC from *six months* prior to his projected release date to approximately *one month* prior to his projected release date (*i.e.*, ten percent of a twelve-month sentence).

### 2. February 14, 2005 Rule

The OLC Memo generated substantial litigation. Several courts rejected the conclusions of the OLC Memo. *See*, *e.g.*, *Goldings v. Winn*, 383 F.3d 17; (finding the OLC Memo was an invalid

---

[3] The OLC Memo interpreted the term "imprisonment" in §3621(b)'s phrase "to designate the place of [a] prisoner's imprisonment" to exclude CCC placement. Thus, under the OLC Memo's interpretation, the BOP lacked the authority to place an inmate in CCC under 18 U.S.C. §3621(b). The OLC Memo indicated that the BOP's authority to designate CCC placement was found only in §3624(c), which mandates placement in a setting that will ease the transition from prison for the lesser of six months or the last ten percent of the inmate's term.

interpretation of statutory provisions); *Elwood v. Jeter*, 386 F.3d 842 (8th Cir.2004) (same); *Steinbach v. Federal Bureau of Prisons*, 339 F. Supp.2d 628, 629 (D. N. J. 2004) (ordering BOP to reconsider placement without regard to OLC Memo); *Pinto v. Menifee*, No. 04-5839, 2004 WL 3019760, at *4-5 (S.D. N.Y. Dec. 29, 2004) (finding application of OLC Memo constituted invalid statutory interpretation and violation of the APA); *Iacaboni v. United States*, 251 F .Supp.2d 1015, 1018 (D. Mass. 2003) (finding that change in BOP policy terminating prior practice of serving entire sentences in CCC placement violated the Ex Post Facto Clause).[4]

These decisions criticized the "10% Policy." They generally ordered the BOP to reconsider CCC placements using the standard applied prior to the OLC Memo. *Goldings* and *Elwood* struck down the "10% Policy" because its interpretation of the limit imposed by § 3624(c) failed to consider that § 3621(b) gave the BOP discretion to transfer prisoners, if appropriate, at any time. *See Goldings*, 383 F.3d at 23-24; *Elwood*, 386 F.3d at 846-47.

The BOP responded with proposed new regulations in August, 2004, which, at least in part, attempted to deal with the judicial critiques of its application of the OLC Memo. *See Community Confinement*, 69 Fed. Reg. 51,213 (Proposed Aug. 18, 2004). The proposal stated that the BOP was exercising its discretion by limiting CCC placement to the last ten percent of an inmate's sentence, not to exceed six months. The proposal remained open for comment until October, 2004, and became final on January 10, 2005. *See Community Confinement*, 70 Fed. Reg. 1659 (Jan. 10, 2005).

The new regulations became effective February 14, 2005 (the "February 14, 2005 Rule"), and amended the Code of Federal Regulations. *See* 28 C. F. R. § 570.21. Specifically, the amended

---

[4] *But see Esposito v. Ashcroft*, No. 04-138, 2005 WL 119872 (N. D. W. Va. Jan. 14, 2005); *Cohn v. Federal Bureau of Prisons*, 302 F. Supp.2d 267 (S. D. N. Y 2004).

language states that: "The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months." 28 C. F.R. §570.21(a). The amended rule allows for exceptions only when other statutes allow for placements exceeding six months or ten percent of the sentence. §570.21(b) (providing examples of potential exceptions-residential substance abuse treatment program, 18 U.S.C. §3621(e)(2)(A), and shock incarceration program, 18 U.S.C. §4046(c)).

An early district court decision which addressed the February 14, 2005 Rule, as codified at 28 C.F. R. §570.21, was *Bilinsky v. Federal Bureau of Prisons*, 2005 WL 1475558, \*3 (D. N.J. 2005). *Bilinsky* involved a challenge similar to the one which Petitioner Scott raises in the instant petition. In *Bilinsky*, the petitioner sought earlier release into a CCC and argued that the February 14, 2005 Rule, like the BOP's policy implemented in 2002, was unconstitutional. The court rejected the prisoner's challenge, finding that the subsequent regulation (28 C.F. R. §570.21(a)) superseded both the *Goldings* and *Steinbach* decisions.

Just as the "10% Policy" of 2002 generated litigation and judicial criticism, so did the February 14, 2005 Rule. In *Turtle v. Francis*, 2005 WL 3504410, \*4 (S. D. Tex. 2005), the prisoner challenged the February 14, 205 Rule and demanded earlier placement in a CCC. The district court dismissed the challenge and noted that "Although no circuit court of appeals has addressed the new February 2005 policy, an overwhelming majority of the district courts considering similar challenges have upheld it." *Turtle*, 2005 WL 3504410 at \*4 (Citing numerous cases).

*Turtle* further noted that the Supreme Court decision in *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714 (2001), provided additional support for approving the February 14, 2005 Rule. *Turtle*, 2005 WL 3504410 at \*5. *Lopez* upheld the BOP's discretionary decision to exclude certain inmates

5

- - those convicted of offenses involving firearms- - from eligibility for early release after successful completion of a drug treatment program under 18 U.S.C. §3621(e)(2)(B).

After *Turtle* was rendered, the Tenth Circuit and the Eighth Circuit found the February 14, 2005 Rule (28 C. F R. §570.20) invalid. *See Wedelstedt v. Wiley*, - - F.3d.- - 2007 WL 512517 (10th Cir., February 20, 2007), and *Fults v. Sanders*, 442 F.3d 1088 (8th Cir., April 6, 2006). *Wedelstedt* held that 18 U.S.C. § 3621, the statute governing the BOP's placement and transfer of prisoners, did not authorize the BOP regulation (§570.20) under which prisoners could be placed in community confinement only for lesser of either the last 10% or last six months of their sentences. *Wedelstedt* held that the regulation was incompatible with the mandate of §3621: that the BOP consider all five factors enumerated therein when making individual placement decisions.[5]

3. Application of Tenth and Eight Circuit Decisions

Clearly, under the February 14, 2005 Rule, and the *Turtle* case, the petitioner's Due Process claim would not succeed. The BOP's "10% Policy" adopted in 2002, and the February 14, 2005 Rule, now carry the weight of being codified as a regulation. The regulation (28 C. F.R. §570.20) became effective after the expiration of the time for notice and comments. As noted, the regulation superseded the *Goldings* and *Steinbach* cases which the petitioner cites.

The Eighth and Tenth Circuits decisions must, however, be considered, although they are not binding in this circuit. The Court will assume for the moment that *Wedelstadt* and *Fults* should be followed. That means that in the instant case, the BOP should consider all of the factors set forth in 18 U.S.C. §3621. In *Wedelstedt*, the Tenth Circuit carefully noted that Wedelstedt's remedy was

---

[5] Several district courts reached the same conclusion. *See Perez v. Winn*, 465 F. Supp.2d 87 (D. Mass., December 19, 2006); *Perez v. Winn*, 457 F. Supp.2d 109 (D. Mass., October 25, 2006); and *Evans v. Williingham*, 413 F. Supp.2d 155 (D. Conn., February 2, 2006).

limited only to the BOP being required to *consider* him for a transfer to a CCC for the last ten percent of his sentence. *Wedelstedt*, 2007 WL 512517 at *8. The relevant language from the opinion reads as follows:

> In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. §3621(b) without regard to the invalid regulations. **This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer.** The record on appeal does not indicate whether the sentencing court made any statements recommending that Wedelstedt serve part of his sentence in a CCC, nor is it appropriate for this court to consider the arguments made in the parties' briefs about Wedelstedt's character.

*Wedelstedt*, 2007 WL 512517, *8 (emphasis added).

Here, the BOP maintains in its various filings that it carefully considered the relevant factors established in Program Statement 7310.04. These factors include the inmate's institutional behavior; his individual needs; existing community resources; and the length of sentence. *Id*. Specifically, as to the factor relating to length of sentence, PS 7310.04 states that "Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs."[6]

Petitioner Scott is serving only a thirteen-month sentence. As the BOP notes, longer placement periods in an RCC or a CCC might be warranted for prisoners who have very long sentences and who are therefore removed from their families and communities for long periods of time. In short, they would typically require a longer time to "adjust" back into a community and would therefore benefit from a longer time in an RCC.

According to the BOP, the petitioner has an established residence and pre-existing job to which he will return at the end of his sentence. The BOP describes the job as the head of

---

[6] The language in PS 7310.04, §9(a), entitled "CCC Criteria and Referral Guidelines," relates to recommendations for CCC placements "based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly." *Id*.

7

development company. The petitioner does not appear to dispute this fact. The BOP further asserts states that the petitioner's family visits him frequently in prison. The petitioner does not appear to dispute that assertion. Frequent family visitation would indicate that the petitioner has not sustained a severance of ties with his family by reason of his incarceration. Again, the term of imprisonment is relatively short: thirteen months, 36 days of which will be spent in an RCC.

Another criteria relates to the nature and circumstance the crime of which the petitioner was convicted. Logically, the more serious the offense, the more time would be required to "readjust" a prisoner back into a community. Here, Scott's offense was not violent; was not a drug related; and did not result in the death or injury of another.

The BOP concludes that Petitioner Scott has minimal adjustment needs. The BOP states that it considered the fact that Petitioner Scott is serving a short thirteen-month sentence and thus, is experiencing only a relatively short-lived absence from his family and community [*See* Record No. 8, p.14]. The BOP states that Scott has strong community ties and resources awaiting him upon his release on July 1, 2007, now only four months away.

Petitioner Scott argues that the BOP "cannot point to any substantial harm if James Scott is permitted to serve the remainder of his sentence in a CCC." [Record No. 4-2, p.7] Scott fails to explain in any detail, however, why or how deferring the RCC placement will irreparably harm him, other than to state categorically that he would benefit from an RCC placement earlier than the BOP has designated. Clearly Scott would like an earlier RCC placement, but he has not established a compelling *need* to an earlier placement.

Section 3624(c) and BOP Program Statement 7310.04 vest discretion with prison officials on the issue of determining the amount of time a federal prisoner will serve in a CCC. Given the

specifics of this case, the Court can not conclude that the BOP abused its discretion in deciding to place Scott in an RCC for 36 days. The petitioner's counsel does an excellent job arguing the possible unfairness of the "10% Policy" which began in 2002. Once past that point, however, the Court agrees with the BOP that applying the BOP's factors, Petitioner Scott will not be irreparably harmed or have a more difficult time readjusting back into society if his placement in an RCC begins on June 1, 2007, as opposed to now or for that matter, that date on which he filed this §2241 petition.

### 4. Application of *Colton v. Ashcroft* case

As for the petitioner's reliance on *Colton v. Ashcroft*, the facts in *Colton* were far different from the instant petition.[7] First, Colton had been sentenced prior to the change in the BOP's policy in 2002. *Colton*, 299 F. Supp. 2d at 684. Second, *Colton* had been told that he would receive six-month term in a CCC. *Id*. at 684-85. He was then told he would receive a five-month CCC placement term. *Id*. Then he was told that after the change to the "10% Policy," his release to a CCC would be delayed and shortened to only 3.8 months. *Id* at 685.

Judge Coffman determined that given the BOP's prior representations to Colton about either a six- or a five-month term in a CCC, Colton had a plausible expectation of a longer term in a CCC. *Id*. at 692-93. Judge Coffman granted Colton's request for emergency injunctive relief, which allowed Colton to be released to a CCC immediately.

Here, Petitioner Scott was sentenced to a one-year term of imprisonment in 2006. Thus, he was sentenced long after the adoption of the "10% Policy," and implementation of the February 14, 2005 Rule into regulation. Scott was not promised a longer term in an RCC. He has no liberty interest in, or due process right to, a longer term in an RCC. The distinguishing facts in *Colton*

---

[7] Judge Jennifer B. Coffman of this Court rendered the *Colton* decision on January 14, 2004.

9

simply render it inapplicable here, and the case does not assist the petitioner.

### 5. Analysis Under Law **Prior** to February 14, 2005 Rule

Although the preceding analysis disposes of the petitioner's claims, mention of prior case law on this topic provides additional insight and support. Under the case law decided prior to *Wedelstedt* and the adoption of the February 14, 2005 Rule, the petitioner's claims would fail. Title 18 U.S.C. §3624(c) states, in part, as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, *not to exceed six months*, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

*Id*. (Emphasis Added)

Just as the Court has discussed in the preceding passages, nothing in this language requires or mandates the BOP to place any federal prisoner in a CCC for a full six months prior to their 10% date. The language merely *authorizes* the BOP to allow CCC placement up to six months. While Program Statement 7310.04 states that an inmate may be referred to a CCC beyond 180 days, it states that such placement is highly unusual and is only possible with extraordinary justification. The instant petitioner has not established extraordinary justification for placement in a RCC longer than one month.

The *Elwood* case, which the petitioner cites, provides him with no authority for his claims. In *Elwood*, the Eighth Circuit noted that while there was there was an aspect of mandatory compliance placed on the BOP as far as CCC placement, it was more general in nature than specific.

> We emphasize, like the First Circuit, that 18 U.S.C. § 3624(c) **does not require placement in a CCC**. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP **may** place a prisoner in a CCC

10

> for six months, or more. Under § 3624(c)) the BOP must formulate a plan of pre-release conditions. This plan **may** include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. **Likewise, the obligation is qualified by the phrase "to the extent practicable."** Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

*Elwood v. Jeter*, 386 F.3d at 846 (emphasis added).

As *Elwood* notes, although the BOP has the *authority* to place a prisoner in an RCC or a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so. In *Distefano v. Federal Bureau of Prisons*, 2004 WL 26999, *4 (S.D. N.Y. March 4, 2004), Distefano was sentenced on October 28, 2002, in the Southern District of New York to a term of 21 months and began serving his sentence on March 7, 2003. The district court issued a writ of mandamus under 28 U.S.C. §1651 compelling the Warden of FCI-Otisville to act promptly and in good faith to *consider* Distefano for placement in a CCC consistent with the BOP's policy prior to December 2002. The court qualified that ruling, however, by stating as follows:

> "This 'ruling does not *require* the Bureau to grant petitioner's request for [CCC] designation, *but only to give that request full and fair consideration*.' McCarthy [*v. Doe* 146 F.3d 118, 122-23 (2d Cir. 1998)] . . . . Because Distefano would become eligible for CCC placement on March 13, 2004 under the prior policy, the BOP is directed to *consider* him for placement by that date."

*Distefano*, 2004 WL 396999, at *6 (Emphasis added). *See also Gambino v. Gerlinski*, 96 F. Supp.2d 456, 459-60 (M.D. Pa. 2000), *aff'd*, 216 F.3d 1075 (3rd Cir. 2000) (unpublished table opinion), in which Gambino argued that 18 U.S.C. §3624(c) required the BOP to provide him with some amount of time, during the last ten percent of his sentence, in pre-release confinement (*e.g.*, a halfway house or home confinement).

The *Gambino* court concluded that §3624 (c) does not create a liberty interest because it

11

"refers to no [mandatory] procedures. It is instead a broadly worded statute setting forth a general policy to guide the prison system." *Id.* at 460 (citing *Badea v. Cox*, 931 F.2d 573, 576 (9th Cir.1991)). The court determined that Gambino had failed to state a claim for relief because he had failed to show that his confinement violated the Constitution or any federal law.

*Gambino* cited an even earlier case, *Prows v. Federal Bureau of Prisons*, 981 F.2d 466 (10th Cir.1992), *cert. denied*, 510 U.S. 830, 114 S.Ct. 98, 126 L. Ed.2d 65 (1993), a case decided under the old BOP policy. In *Prows*, a federal prisoner sought an injunction compelling his placement in a halfway house or CCC on the theory that §3624(c) mandates non-prison placement for federal prisoners prior to their release. The Tenth Circuit rejected the claim, stating as follows:

> [w]hile there is mandatory (albeit qualified) language employed in the statute, it relates only to the general direction to facilitate the prisoner's post-release adjustment through establishment of some unspecified pre-release conditions. Nothing in §3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period.

*Id*. at 469 (citing *United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir.1991)).

In *Hendershot v. Scibana*, 343 F. Supp.2d 745, 746 (W.D. Wis. November 4, 2004), the district court had originally granted the petitioners' writs of habeas corpus under 28 U.S.C. §2241 and ordered the BOP to consider petitioners for transfer to a halfway house or other transitional program as early as six months before their projected release dates. On the BOP's motion to amend judgment, the court vacated its decision and dismissed the petitions. The district court stated:

> Even if petitioners were successful in challenging the bureau's new policy in a new lawsuit, they would not be entitled to halfway house placement for the last six months of their sentences. **The best petitioners could hope for from this court is an order directing respondent to consider petitioners for halfway house placement in the exercise of his discretion. But even this outcome may not result in the relief petitioners seek.** In *Richmond* [*v. Scibana*, 387 F.3d 602 (7th Cir. October 19, 2004), the court noted that the Department of Justice "has decided not to exercise in prisoners' favor whatever dispensing power it possesses. It has

>   proposed a rule that inmates will be placed in community or home confinement only during the last 10% of their sentences" as an exercise of its discretion under §3621(b). *Richmond*, 387 F.3d at 605. *Petitioners should consider the likelihood that a favorable decision will not result in halfway house placement before their 10% dates*.

*Hendershot*, 343 F. Supp.2d at 746.

Clearly, prior case law supports the BOP's decision in this case.

### 6. Fifth and Eighth Amendment Analysis

The BOP correctly states that the Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

The general rule is that the Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976). The Constitution does not confer inmates a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460 at 468, (1983). The Due Process Clause requires only that inmates' conditions of confinement be consistent with their sentence. *Id*. at 468.

In short, well settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison (such as a CCC), security classification, or housing assignment.

13

*See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995). Accordingly, the petitioner simply has no due process right, protected by the Fifth Amendment, to be placed in a an RCC earlier than prior to the remaining ten percent of his sentence.

Finally, assessing the facts under the Eighth Amendment would not salvage the claim. In 1995, the Supreme Court developed a rule for analyzing "conditions of confinement" claims which renders a fatal blow to the plaintiff's claim. The Supreme Court determined that for a prisoner, a deprivation of a legally cognizable liberty interest occurs only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293 (1995). Citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983), the Supreme Court held in *Sandin* that the Due Process Clause is aimed at protecting no more than "the most basic liberty interests" in prisoners, and that it will not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates. *Sandia v. Conner*, 515 U.S. at 478..

Under the *Sandin* analysis, housing assignments and classification decisions (such as extended placement in disciplinary segregation and transfers to higher security prisons) have been upheld as the "ordinary incidents of prison life." *See Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for publication in the Federal Reporter) (Merchant's maximum security classification, 21-month confinement in the special housing unit and transfer to a more secure facility were simply the "ordinary incidents of prison life," and did not

implicate a protected liberty interest).

### 7. Motions for Preliminary Injunction [Record Nos. 4 and 10]

The Court will briefly discuss the petitioner's motions seeking a preliminary injunction. The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering factor (1) in relation to this case, Petitioner Scott's likelihood of success is non-existent, given application of the BOP's various criteria to the facts of this case; the February 14, 2005 Rule; the broad discretion vested in the BOP to decide matters relating to CCC placement; and the fact that prisoners have no liberty interest in CCC placement over and above what the statute specifically requires. As noted before, the Petitioner Scott was sentenced to a relatively short term: thirteen months.

The BOP has determined that the petitioner can be released into a CCC on June 1, 2007, one month prior to the expiration of his thirteen-month sentence. The petitioner's individual needs and community resources all point to a finding that he is will not suffer irreparable harm by placing him an RCC for only 36 days. Irreparable harm is the standard.

As to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-

managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). Finally, the Court is not convinced that the public interest would be served by interfering with the BOP's decision to release the petitioner into a CCC on June 1, 2007.

Petitioner cannot demonstrate any likelihood of success on his claims. Therefore, no injunctive relief can be awarded. The petitioner's requests for a preliminary injunction [Record Nos. 4 and 10] will be denied.

### CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  The "Motions for Preliminary Injunction" [Record Nos. 4 and 10] are **DENIED**.

(2)  This action (06-CV-551-KKC) is **DISMISSED** with prejudice.

(3)  Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondents.

Dated this 16th day of March, 2007.

Signed By:
*Karen K. Caldwell* KKC
**United States District Judge**

16